UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UAP HOLDING CORP., et al.,

　　　　　Plaintiffs,

　　v.

RON MAITOZA, et al.,

　　　　　Defendants.

CASE NO. C06-1332RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on Defendants' motion for summary judgment (Dkt. # 55) against three of Plaintiffs' tort claims. The court has considered the parties' briefing and supporting evidence, and has heard from the parties at oral argument. For the reasons stated below, the court GRANTS Defendants' motion.

## II. BACKGROUND

In 2000, Defendant Ron Maitoza was hired by Plaintiff United Agri Products, Inc. ("UAP"), a distributor of agricultural inputs and professional non-crop products to golf courses, resorts, nurseries, greenhouses, and other markets. Parent company UAP Holding Corp. ("UAPHC") holds all the stock of UAP and UAP Distribution, Inc.[1]

---

[1] This order refers to Plaintiffs generally as "UAP" except where the context requires specificity.

ORDER - 1

Maitoza was a senior executive of UAP Distribution, the national vice president of sales and operations for the non-crop division, until his employment was terminated in September 2005.

In late October 2005, Maitoza was hired by UAP rival ProSource One to head a new office in Sumner, Washington.  Over the next year, the majority of UAP employees in Maitoza's former office, including Shane Riley and Martin Cottle, left UAP to work for ProSource One.  In August 2006, Plaintiffs brought suit against individual Defendants Maitoza, Riley, and Cottle alleging, *inter alia*, that they breached fiduciary duties owed to UAP, and against the individual Defendants and ProSource One for unfair competition and tortious interference.  Defendants request summary judgment against these three claims.

### III.  DISCUSSION

**A.   Legal Standard on Summary Judgment.**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of demonstrating the absence of a dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met this initial burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue exists for trial.  Fed. R. Civ. P. 56(e); *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

**B.   The Fiduciary Duty and Unfair Competition Claims are Preempted by Washington's Uniform Trade Secrets Act**.

Defendants assert that Plaintiffs' tort claims should be dismissed because they are preempted by Washington's Uniform Trade Secrets Act ("UTSA").

The UTSA preempts common-law claims that are based on trade-secret misappropriation: "This chapter displaces conflicting tort, restitutionary, and other law of

ORDER - 2

this state pertaining to civil liability for misappropriation of a trade secret." RCW 19.108.900(1). Due to UTSA preemption, a plaintiff cannot use alleged trade-secret misappropriation as the basis for multiple claims:

> Since [Plaintiff's] tort claims are all based upon the same acts [as the UTSA claim], we affirm the lower court's ruling that the UTSA displaces them.
>
> While the UTSA does not affect "[c]ontractual or other civil liability or relief that is not based upon misappropriation of a trade secret[,]" it specifically displaces conflicting tort laws pertaining to trade secret misappropriation. RCW 19.108.900. Thus, [Plaintiff] may not rely on acts that constitute trade secret misappropriation to support other causes of action.

*Ed Nowogroski Ins., Inc. v. Rucker*, 88 Wn. App. 350, 358 (1997).

Plaintiffs' complaint alleges that the individual Defendants misappropriated UAP trade secrets:

> Maitoza's, Cottle's, and Riley's disclosure of UAP's confidential proprietary customer information to ProSource One and the use by Maitoza, Cottle, Riley and ProSource of that information constitutes threatened and actual misappropriation of UAP's trade secrets under the Washington Trade Secrets Act, RCW 19.108.020.

Complaint ¶ 32. The complaint also refers to the trade-secret misappropriation in its description of the claims for breach of fiduciary duty and unfair competition:

> Maitoza, Cottle and Riley breached their fiduciary duties to UAP by impermissibly retaining and using UAP's confidential and proprietary information to solicit UAP's customers.
>
> . . .
>
> By breaching their fiduciary duties to UAP, Maitoza, Cottle and Riley engaged in . . . unfair competition.

Complaint ¶¶ 29 & 35. Although Plaintiffs' description of their tortious interference claim in the complaint does not reference trade secrets, Plaintiffs' response to an interrogatory seeking the facts supporting their tortious interference claim suggests that the claim is based at least in part on trade-secret misappropriation:

> Defendants tortiously interfered with Plaintiff's business relationships . . . by using confidential and proprietary UAP information to solicit UAP customers.

Baehr Decl., Ex. A.

ORDER - 3

Plaintiffs agree that their tort claims are preempted to the extent that they rely on trade-secret misappropriation. *See* Pltfs.' Opp'n (Dkt. # 65) at 10-12. They also contend, however, that their tort claims have other factual bases that have been discovered since they drafted the complaint, and that because they have notified Defendants of their expanded claims, their complaint has been "constructively amended." *See id*.

The court does not agree that Plaintiffs have constructively amended their Complaint. As "notice," Plaintiffs cite statements (included in their first Rule 26(a) disclosures and again in their initial interrogatory responses) that Plaintiffs intend to conduct discovery as to all the Defendants' (not just Maitoza's) solicitation of UAP customers. *See* Pltfs.' Opp'n at 11( citing Larson Decl. (Dkt. # 66), Ex. M & N). These statements do not notify Defendants that Plaintiffs' intend to expand the factual bases for their tort claims. They could have been related to Plaintiffs' contract claim, which asserts that Maitoza breached his non-solicitation agreement by directly *or indirectly* soliciting UAP customers. The statements do not even refer to the fiduciary duty or unfair competition claims, and are not specific enough to be considered notice of Plaintiffs' amendment of those claims.

Because Plaintiffs' fiduciary duty and unfair competition claims as pleaded in the complaint are entirely based on trade-secret misappropriation, and because Plaintiffs have not amended their complaint under Fed. R. Civ. P. 15(a) or constructively amended their complaint, the court finds that these claims are preempted by the UTSA. Accordingly, these claims[2] are dismissed.

---

[2] Defendants noted for the first time in their reply brief that the Washington tort of "unfair competition" is limited to situations where a party passes off its goods as the goods of a competitor. *See Ivan's Tire Service Store, Inc. v. Goodyear Tire & Rubber Co.*, 10 Wn. App. 110, 122 (1973). Defendants claim that because UAP has not alleged that ProSource One or its employees passed off any UAP goods as its own, this is an additional reason why the unfair competition claim should be dismissed. Because of the court's dismissal of the unfair competition claim based on UTSA preemption, and because this argument was raised for the first time in a reply brief, the court declines to analyze the merits of the argument.

ORDER - 4

**C.     To the Extent the Tortious Interference Claim is Not Preempted, It Fails Because Plaintiffs Have Presented No Evidence as to One Element of the Tort.**

Defendants contend that Plaintiffs' tortious interference claim should be dismissed for two reasons. First, Defendants allege that the claim is based in part on trade-secret misappropriation, so it is preempted by the UTSA as discussed in the previous section. Plaintiffs do not dispute this contention. Defendants also argue that to the extent the tortious interference claim is based on other facts – specifically employee raiding – the claim still fails because Plaintiffs have not presented any evidence of a required element of tortious interference.

In the description of the tortious interference claim in their complaint, Plaintiffs allege that Defendants used improper means to intentionally interfere with UAP's ongoing and potential business relationships with its employees, customers, and prospective customers. Complaint ¶¶ 38-40.

There are five elements of a tortious interference claim: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the contractual relationship on the part of the interferor; (3) intentional interference inducing or causing a breach of termination of the contractual relationship; (4) an improper purpose or use of improper means to cause the interference; and (5) resulting damage to the party whose contractual relationship has been disputed. *See Leingang v. Pierce County Med. Bureau, Inc.,* 131 Wn.2d 133, 157 (1997).

To prevail on a claim of tortious interference based on employee raiding, the plaintiff must prove that, in the process of hiring plaintiff's employees, the defendant acted with improper (not simply competitive) motive or used improper means. *Pleas v. City of Seattle*, 112 Wn.2d 794, 805 (1989) (interfering conduct must be "not only intentional but wrongful"); *Birkenwald Distrib. Co. v. Heublein*, 55 Wn. App. 1, 11 (1989) (for interference to be tortious, it must be "purposefully improper interference," because "when one acts to promote lawful economic interests, bad motive is essential" — "incidental interference will not suffice"). "Asserting one's rights to maximize economic

ORDER - 5

interests does not create an inference of ill will or improper purpose." *Birkenwald*, 55 Wn. App. at 12.

      Defendants argue that Plaintiffs have presented no evidence that any Defendant acted with an improper purpose or means to conduct employee raiding.  Plaintiffs make two arguments in response.  First, Plaintiffs claim that Cottle's conduct was improper because he scheduled his departure from UAP in order to maximize damage to UAP and recruited for ProSource One while still employed by UAP.  Because Plaintiffs claim that Cottle's actions benefited Maitoza and ProSource One, they claim that all three Defendants are equally liable.  *See* Pltfs.' Opp'n at 8-9.  These allegations are not accompanied by any citation to evidence.  Naturally, Cottle and Riley both deny inducing anyone to leave UAP or making disparaging comments about UAP while employed there.  Cottle Decl. (Dkt. # 77) ¶¶ 4-5; Riley Decl. (Dkt. # 78) ¶¶ 4-5.  Defendants have also produced evidence that Cottle and Riley's sales at UAP were at above-average levels at the time of their departure, suggesting that they provided diligent service to UAP even in the last days of their employment.  Cottle Decl. ¶ 2; Martin Decl. ¶ 2; Byrne Decl. (Dkt. # 76), Ex. A.  Because Plaintiffs have not provided any evidence to support the allegations that any Defendant scheduled his departure from UAP to inflict damage to the company or otherwise improperly recruited other UAP employees, Plaintiffs' first allegation of impropriety is insufficient to withstand summary judgment.

      As a second ground for improper purpose, Plaintiffs claim that ProSource One hired Maitoza in order "to compete, induce, interfere, and otherwise breach his contract with UAP."  Pltfs.' Opp'n at 10.  Again, this allegation is unaccompanied by any citation to evidence.  The record contains evidence that shortly after Maitoza was hired, ProSource One contacted UAP to request that UAP release Maitoza from his non-compete and non-solicitation obligations, but UAP refused to do so.  *See* Byrne Decl. (Dkt. # 76), Ex. C.  ProSource One's inquiry was lawful and does not constitute evidence that ProSource One hired Maitoza with the intent that he breach his obligations to UAP.  In fact, Defendants have presented evidence that ProSource One notified Maitoza upon

ORDER - 6

hiring that he should respect his legal obligations to UAP regarding proprietary information.  *See id.*, Ex. B.  Even though ProSource One was aware of Maitoza's non-compete agreement at the time he was hired, Plaintiffs have presented no evidence that ProSource One hired Maitoza with the improper purpose that he breach the agreement.  Therefore, Plaintiffs' second second allegation of impropriety fails.

Because Plaintiffs have not submitted any evidence to show that Defendants acted with improper purpose or used improper means – beyond simply recruiting UAP employees – Plaintiffs have failed to meet their burden with respect to an element of tortious interference.  Accordingly, Plaintiffs' tortious interference claim fails.

## IV.  CONCLUSION

For the reasons stated above, Plaintiffs' fiduciary duty, unfair competition, and tortious interference claims are dismissed.  IT IS HEREBY ORDERED that Defendants' motion for summary judgment (Dkt. # 55) is GRANTED.

Dated this 21st day of May, 2008.

*Richard A. Jones*
_____
The Honorable Richard A. Jones
United States District Judge

ORDER - 7